UNITED STATES of America,
Appellant,

v.

Shawn MIDDLETON, a/k/a Sealed Deft. 13, a/k/a Shawnnery Middleton, Defendant–Appellee.

Docket No. 01–1502.

United States Court of Appeals,
Second Circuit.

Argued: Aug. 8, 2002.
Decided: April 14, 2003.

Elizabeth S. Riker, Assistant United States Attorney (Joseph A. Pavone, United States Attorney for the Northern District of New York, Lisa M. Fletcher, Assistant United States Attorney, of counsel) Syracuse, NY, for Appellant.

Ronald J. Pelligra, Syracuse, NY, for Defendant–Appellee.

Before: CALABRESI, POOLER, and SACK, Circuit Judges.

PER CURIAM.

The Government appeals the sentence imposed on defendant-appellee Shawn

Middleton by the United States District Court for the Northern District of New York (Frederick J. Scullin, Jr., *Chief Judge*). After applying all adjustments required by the United States Sentencing Guidelines ("U.S.S.G." or "guidelines"), Middleton's guideline sentencing range was 70–87 months. Middleton had complied with the terms of his release pending sentencing. Middleton also expressed a desire to participate in a rehabilitation program offered by the Bureau of Prisons to defendants sentenced to serve a total of 60 or fewer months in prison. On these bases, the district court granted Middleton a downward departure and sentenced him to 60 months' imprisonment, the mandatory minimum sentence for Middleton's crime of conviction. For the reasons that follow, we reverse and remand for resentencing.

## BACKGROUND

On June 20, 2000, Middleton was arrested by agents of the Drug Enforcement Agency for participating in a multi-tiered distribution network for marijuana headquartered in Phoenix, Arizona. Three days later, he was released from detention without bond but subject to conditions established under 18 U.S.C. § 3142(c). Those conditions required Middleton, *inter alia*, to refrain from using alcohol, to refrain from using or possessing any controlled substance, to submit to regular drug testing, to maintain or seek employment, and to participate in a substance abuse therapy and counseling program.

On February 9, 2001, Middleton pled guilty to one count of conspiring to possess with intent to distribute and to distribute marijuana in violation of 21 U.S.C. § 846. In his plea agreement, Middleton stipulated that he was involved in the possession and distribution of 700 to 1,000 kilograms of marijuana. Pursuant to U.S.S.G. § 2D1.1(c)(5), Middleton's base offense lev-

el was 30, and he was entitled to receive a three-level downward adjustment for his acceptance of responsibility under U.S.S.G. §§ 3E1.1(a) & (b), giving him an adjusted offense level of 27. With his Criminal History Category of I, after a one-level downward departure pursuant to U.S.S.G. § 4A1.3, Middleton's offense level carried a guideline sentencing range of 70–87 months.

At the time of his arrest, Middleton had a history of alcohol, marijuana, and cocaine abuse. According to his presentence investigation report, he admitted to having abused alcohol regularly between approximately 1989 and April, 1999, having abused cocaine sporadically between 1996 and 1997, and having used marijuana daily from approximately 1991 until his arrest on June 20, 2000.

Between his arrest and sentencing, Middleton complied with the conditions of his release. He maintained employment, completed a sixteen-week substance abuse program, and attended Alcoholics Anonymous meetings. He regularly passed the drug tests administered to him.

Middleton's plea agreement gave him an opportunity to cooperate with the government in exchange for a downward departure pursuant to U.S.S.G. § 5K1.1. Middleton declined to give that assistance, and the government therefore declined to move for such a downward departure.

As his sentencing approached, Middleton expressed a desire to participate in the Bureau of Prisons' "Intensive Confinement Center" ("ICC") program. An inmate sentenced to 12 to 30 months in prison and who successfully completes the ICC program may receive up to a six-month reduction in sentence. 28 C.F.R. § 524.32(d)(2). An inmate sentenced to more than 30 but less than 60 months' imprisonment who successfully completes the program ordi-

narily is eligible to serve the final 24 months of his or her sentence in a community-based program. 28 C.F.R. § 524.32(d)(1). The ICC program is not available to inmates sentenced to serve more than 60 months in prison.

Hoping to enter the ICC program, Middleton moved for a three-level downward departure for extraordinary rehabilitation pursuant to U.S.S.G. § 5K2.0, to an adjusted offense level of 24 which, along with a Criminal History Category of I, would subject him to a 51–63 month sentencing range and enable the sentencing court to sentence him to 60 months' incarceration. In support of his claim of extraordinary rehabilitation, Middleton cited his compliance with the rehabilitation-related terms of his supervised release, and letters from his employer and family members praising his behavior.

Middleton was sentenced on August 23, 2001. Based on the evidence presented by Middleton, the district court found that Middleton had "made efforts to rehabilitate [him]self, which may or may not be extraordinary, but [are] darn close to it." The court therefore granted Middleton a three-level downward departure based on extraordinary rehabilitation, and sentenced him to the 60–month mandatory minimum sentence required by 21 U.S.C. § 841(b)(1)(B), which was within the adjusted sentencing range.

The government appeals.

### DISCUSSION

A "sentencing court may impose a sentence outside the range established by the applicable guidelines, if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that de-

scribed.'" U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b)). We apply a "clearly erroneous" standard to a district court's factual findings with respect to sentencing and review a district court's decision to depart from the applicable guideline range for abuse of discretion. *United States v. Payton,* 159 F.3d 49, 61 (2d Cir.1998). The test for abuse of discretion is:

> whether the circumstances relied upon to justify a downward departure are so far removed from those found exceptional in existing case law that the sentencing court may be said to be acting outside permissible limits; then, and only then, should we rule that it has misused its discretion.

*United States v. Galante,* 111 F.3d 1029, 1036 (2d Cir.1997). We review *de novo,* however, whether the factor relied upon by the sentencing court "is a permissible ground for departure." *United States v. Williams,* 37 F.3d 82, 85 (2d Cir.1994) (internal quotation marks omitted). Finally, "[i]f there is no clear error in the district court's factual findings and no error in its conclusion that the factor is a permissible ground for departure, ... we review the resulting sentence to determine whether or not it is reasonable." *Id.* (internal citations omitted).

A downward departure based on post-sentencing rehabilitation is only available when a defendant's rehabilitation, compared to his or her "starting point," is sufficiently extraordinary to take the defendant out of the heartland of cases contemplated by the Sentencing Commission in formulating the Guidelines. *United States v. Bryson,* 163 F.3d 742, 746–47 (2d Cir.1998). We have held that "compliance with court-ordered restitution" cannot justify a downward departure for extraordinary rehabilitation. *United States v. Carpenter,* 320 F.3d 334, 343 (2d Cir.2003).

After his arrest, Middleton ceased using marijuana, participated in a substance abuse program, took narcotics tests, and maintained gainful employment. All of these were conditions of Middleton's release, and indeed are typical conditions for the release pending trial of a defendant charged with a narcotics offense. *See* 18 U.S.C. §§ 3142(c) & 3148 (establishing conditions for release pending trial and sanctions for violating those conditions). We see no basis on this record for finding Middleton's rehabilitation "extraordinary."

We do not thereby hold today that compliance with the conditions of pre-trial release cannot be evidence of extraordinary rehabilitation, or that compliance alone can never justify such a downward departure. We do conclude, however, that Middleton's compliance with his conditions of pre-trial release here, compared to his "starting point," was insufficiently extraordinary to take the him out of the heartland of cases contemplated by the Sentencing Commission in formulating the guidelines.

Chief Judge Scullin appears to have departed downward in part to enable Middleton to take advantage of the ICC program. We have previously permitted such a departure, to enable a defendant addicted to crack cocaine to take advantage of the only treatment program then available within the federal prisons. *See United States v. Williams,* 65 F.3d 301, 306 (2d Cir.1995).

In *Williams,* we approved of a departure so the defendant could participate in a program from which he would have been excluded solely because of the timing of his conviction, but for which he was otherwise qualified. The rehabilitation program in *Williams* was an experimental, one-time trial limited to defendants with 18 to 36 months remaining on their sentences, and was the only rehabilitation program then available. *Id.* at 304–06.

Here, the Bureau of Prisons has chosen to limit the ICC program to defendants sentenced to serve a total of 60 or fewer months. 28 C.F.R. § 524.31(a)(1)(ii). *Williams* does not support downwardly departing to let a defendant enter a rehabilitation program from which he would ordinarily be precluded because the seriousness of his offense implies a sentence beyond that established by the program's administrator as a criteria for admission. Neither the Bureau of Prisons in establishing and administering the ICC program, nor Congress in directing the Bureau to do so, chose to give district courts the authority to place otherwise unqualified defendants in the program. *See* 18 U.S.C. § 4046; 28 C.F.R. §§ 524.30–33. Such a departure is not only contrary to the Guidelines and the discretion given to district courts in sentencing, it may undermine the Bureau's efforts to offer an opportunity for effective rehabilitation and early release to qualified prisoners. *See Gissendanner v. Menifee,* 975 F.Supp. 249, 250–51 (W.D.N.Y.1997) (admission into the ICC program is "within the [Bureau of Prisons'] sole discretion").

## CONCLUSION

For the foregoing reasons, the judgment of the district court is vacated as to sentence only, and the case is remanded to the district court for the defendant to be resentenced at an adjusted offense level of 27 and Criminal History Category of I, which carries a guideline range of 70–87 months' imprisonment.