**UNITED STATES of America,**
**Appellant,**

**v.**

**Norman Washington STULTZ, also known as Norman Stulze, also known as Norman Stultze, also known as Peter Myree, Defendant–Appellee.**

**Docket No. 02–1625.**

United States Court of Appeals, Second Circuit.

Argued Sept. 5, 2003.

Decided Jan. 15, 2004.

Shawn J. Chen, Assistant United States Attorney, New Haven Connecticut (Kevin J. O'Connor, United States Attorney, District of Connecticut, New Haven, Connecticut, of counsel), for Appellant.

Michael G. Moore, Springfield, Massachusetts, for Defendant–Appellee.

Before: NEWMAN, CARDAMONE, and SOTOMAYOR, Circuit Judges.

CARDAMONE, Circuit Judge.

The United States appeals from a judgment of conviction, insofar as it imposed sentence on defendant Norman Washington Stultz (defendant or appellee), entered in the United States District Court for the District of Connecticut (Dorsey, J.) on October 1, 2002. The appeal from this conviction requires us to interpret United States Sentencing Guidelines (U.S.S.G. or Guidelines) § 2L1.2 in light of recent Congressional amendments. Defendant Stultz pled guilty to one count of illegal reentry into the United States after deportation in violation of 8 U.S.C. § 1326(a) (2000). The district court enhanced Stultz's sentence 16 levels due to a prior conviction for drug trafficking. *See* U.S.S.G. § 2L1.2(b)(1)(A)(i) (2001). The district court departed downward five levels on the grounds that this prior conviction was 16 years old and involved the sale of marijuana. The appellant United States maintains the district court's downward departure was in error. We vacate and remand this case for resentencing within the applicable Guidelines range.

## BACKGROUND

Norman Stultz, a native and resident of Jamaica, originally entered the United States on June 3, 1982 as a lawful permanent resident. On November 12, 1986 defendant was convicted in Norwalk, Connecticut Superior Court on six counts of selling marijuana, a felony, in violation of Conn. Gen.Stat. § 21a–277(b). He was sentenced on each count to five years imprisonment—suspended after 18 months—with the sentences to run concurrently. In January 1991 the Immigration and Naturalization Service (INS) instituted deportation proceedings against Stultz on the grounds that his drug conviction made him subject to removal pursuant to § 241(a)(11) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(2)(B) (1991). Appellee failed to appear for his hearing and was ordered deported. He did not appeal the deportation order to the Board of Immigration Appeals, and on November 3, 1993, he was removed to Jamaica.

On April 19, 2001 the INS received a report that defendant was being held on state criminal charges at the Bridgeport Correctional Center in Bridgeport, Connecticut. Using fingerprint analysis, the Federal Bureau of Investigation confirmed Stultz's identity, and the INS confirmed that he had neither sought nor received permission to reenter the United States. Defendant was indicted on September 20, 2001 for reentering the United States after being deported without the Attorney General having expressly consented to his reapplication for admission.

On July 11, 2002 Stultz entered a guilty plea to one count of illegal reentry by a removed alien in violation of 8 U.S.C. § 1326 that provides criminal penalties for "any alien who—(1) has been denied admission, excluded, deported, or removed ... and thereafter (2) enters, attempts to enter, or is at any time found in, the United States." 8 U.S.C. § 1326(a) (2000).

In calculating defendant's sentence, the district court began with the base offense level of 8. *See* U.S.S.G. § 2L1.2(a). It then applied a sentence enhancement under § 2L1.2(b)(1)(A)(i), which mandates a 16–level increase "[i]f the defendant previously was deported ... after ... a conviction for a felony that is ... a drug trafficking offense for which the sentence imposed exceeded 13 months." § 2L1.2(b)(1)(A)(i). Three levels were subtracted for acceptance of responsibility, *see* U.S.S.G. § 3E1.1 (2001), resulting in a total offense level of 21. Factoring in a criminal history category of IV with the total offense level, the Guidelines provide a range of 57–71 months of imprisonment. *See id.* ch. 5, pt. A (sentencing table).

The district court departed downwardly by five levels, a decision which is at the crux of this appeal. In so doing, the sentencing court commented that it had "great reservations" about applying a 16–level enhancement for a 16 year old conviction for marijuana, especially as the enhancement would increase the sentence by a period greater than Stultz's entire sentence for the earlier marijuana conviction. It therefore ruled that the length of time between the prior conviction and the instant conviction, coupled with the nature of the prior offense (marijuana) were issues the Sentencing Commission did not fully consider when it created the 16–level enhancement. The district court accordingly reduced the offense level from 21 to 16, thereby reducing the sentencing range to 33–41 months. The court then sentenced Stultz to 36 months in prison—a sentence at the lower end of the Guidelines range. From this sentence the government appeals.

## DISCUSSION

### I

### A. *Standard of Review*

We note at the outset that the standard of review for sentencing departures has been changed. Previously, we reviewed a district court's decision to depart from the Sentencing Guidelines for an abuse of discretion, in accordance with the analytical framework set out by the Supreme Court in *Koon v. United States,* 518 U.S. 81, 99–100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). *See, e.g., United States v. Payton,* 159 F.3d 49, 61 (2d Cir.1998). Recently, however, Congress passed the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 (PROTECT Act), Pub.L. 108–21, 117 Stat. 650 (2003), which, in amending the standard of review, requires us to review departures from the Guidelines *de novo.* 18 U.S.C. § 3742(e).

■ The new law went into effect after Stultz's sentence was imposed, but while it was pending on appeal. We need not decide whether it applies retroactively for the purposes of this appeal, for whether the factor relied upon by the sentencing court is a permissible ground for departure has always been reviewed *de novo. United States v. Middleton,* 325 F.3d 386, 389 (2d Cir.2003) (per curiam) (citing *United States v. Williams,* 37 F.3d 82, 85 (2d Cir.1994)). Although discussion of the PROTECT Act is left for another day, we cannot help noting that district courts enjoy, under the Supreme Court's guidance, a distinct institutional advantage over appellate courts in determining sentences. This follows because of the vastly greater number of sentencing cases they are required to rule upon, only a small percentage of which are ever appealed. To move the various appellate courts from their traditional function of reviewing to the front lines of determining sentences *de novo,* will certainly at the least undermine the Sentencing Commission's laudable goal of eliminating unjustified disparities in sentencing.[1]

### B. *Enhancement for Prior Drug Trafficking Offense*

Prior to 2001 a defendant charged with illegal reentry after deportation was subject to the 16–level enhancement for any previous "aggravated felony." U.S.S.G. § 2L1.2(b)(1)(A) (2000). The term "aggravated felony" cross-referenced the definition at 8 U.S.C. § 1101(a)(43), which provided a broad definition encompassing many crimes. § 2L1.2, Application Note 1. The Commentary accompanying the 2001 amendments recognized the disproportionate penalties that resulted from applying a uniform enhancement for such a broadly-defined term. The disjunction, the Sentencing Commission noted, resulted in situations where "a defendant who previously was convicted of murder, for example, receive[d] the same 16–level enhancement as a defendant previously convicted of simple assault." U.S.S.G.App. C, Amend. 632 (Reason for Amendment) (Supp.2001).

The 2001 amendments replaced this uniform enhancement with a graduated system that applies different enhancements

---

**1.** The United States Judicial Conference opposed certain provisions of the PROTECT Act because the federal judiciary and the United States Sentencing Commission were not consulted prior to its enactment. One of those provisions is the standard of review for departures, where the PROTECT Act is contrary to a previous position taken on this subject by the Judicial Conference. *Judicial Conference Seeks Restoration of Judges' Sentencing Authority,* The Third Branch (Admin. Office of the U.S. Courts, Washington, D.C.), Oct. 2003, at 2–3.

depending on the severity of the prior crime. The current Guidelines provide the following five tiers of enhancements

(1) Apply the Greatest:

If the defendant previously was deported, or unlawfully remained in the United States, after—

(A) a conviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months; (ii) a crime of violence; (iii) a firearms offense; (iv) a child pornography offense; (v) a national security or terrorism offense; (vi) a human trafficking offense; or (vii) an alien smuggling offense committed for profit, increase by 16 levels;

(B) a conviction for a felony drug trafficking offense for which the sentence imposed was 13 months or less, increase by 12 levels;

(C) a conviction for an aggravated felony, increase by 8 levels;

(D) a conviction for any other felony, increase by 4 levels; or

(E) three or more convictions for misdemeanors that are crimes of violence or drug trafficking offenses, increase by 4 levels.

U.S.S.G. § 2L1.2(b)(1).

█ The district court correctly ruled that Stultz's prior conviction for dealing marijuana triggered the 16–level enhancement. The enhancement properly applies to Stultz because his prior crime was (1) a felony, (2) a drug trafficking offense, and (3) an offense for which the sentence imposed exceeded 13 months.

First, Connecticut's laws plainly make Stultz's marijuana offense a "felony" for purposes of § 2L1.2's enhancement. "Felony" is defined in the Guidelines Application Notes as "any federal, state, or local offense punishable by imprisonment for a term exceeding one year." § 2L1.2, Application Note 1(B)(iv). The Connecticut statute under which Stultz was convicted provides

Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with intent to sell or dispense, possesses with intent to sell or dispense, offers, gives or administers to another person any controlled substance ... may, for the first offense ... be imprisoned not more than seven years....

Conn. Gen.Stat. § 21a–277(b) (1985). This is a state crime, punishable for a term in prison exceeding one year, and is therefore a felony for purposes of the Guidelines.

Second, the crime likewise qualifies as a "drug trafficking offense" under the Guidelines. Application Note 1 defines "drug trafficking offense" as "an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 2L1.2, Application Note 1(B)(iii). Stultz's conviction on six counts of the sale of marijuana is unequivocally within this definition, as it involved the possession of a controlled substance with intent to dispense it in violation of Connecticut law.

Third, for this offense Stultz was sentenced to 5 years in prison—suspended after 18 months—a sentence that exceeded 13 months. Accordingly, Stultz's prior offense renders him eligible for § 2L1.2's 16–level enhancement.

### C. Departures From the Guidelines

Upon applying the 16–level enhancement, the district court nevertheless departed downward by five levels. Evident-

ly motivated in part by a determination that marijuana crimes are less serious than other drug crimes and in part by the age of the previous offense, the district court stated

> In any event, the 16–level increase adds, frankly, more to his sentence range than what he got in the first place for the marijuana offense, and that's troublesome to me . . . .
>
> . . . I do think that the 16–level increase for a 16–year–old marijuana sale . . . is disproportionate, and I am inclined to depart from the guidelines downward by—on the basis that the guidelines do not adequately take into consideration the age of the offense.
>
> . . . I think that not only by the duration of time since the offense which constitutes the basis for the aggravated felony increase in the offense level, and because of the nature of what was involved, albeit a dealership situation in marijuana, was not adequately taken into consideration by the Sentencing Commission in the blanket imposition of a 16–level increase on the basis of the sentence being more than 13 months
> . . . .

■ A sentencing court may depart from the Guidelines range if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b)(1) (2000). In assessing whether the Commission has adequately taken a circumstance into consideration, the court must "consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission." Id. "[B]ecause one of the major purposes of the Guidelines was to eliminate unjustified disparities in sentences among similarly situated defendants, 'before a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline.'" United States v. Tappin, 205 F.3d 536, 540 (2d Cir.2000) (quoting Koon, 518 U.S. at 98, 116 S.Ct. 2035).

■ In considering a departure we must therefore first evaluate the contours of the heartland of the guideline at issue; then determine whether the circumstance on which the departure was based has been adequately considered by the Commission in creating that heartland.

## II

### A. Departure for Marijuana

When it moved from a blanket enhancement to a graduated one, the Commission created three separate tiers of drug trafficking offenses. In doing so, it made clear that not all drug trafficking offenses were to be treated equally, and it explained how it wanted the courts to address various types of drug crimes.

In view of the specificity with which the Sentencing Commission addressed enhancements for prior crimes, including prior drug trafficking crimes, we conclude that the district court erred when it decided the Commission had not taken into account the severity of prior drug offenses involving marijuana. Regardless of our belief as to the seriousness of marijuana offenses vis-à-vis other drug offenses, appellant's marijuana trafficking conviction fits squarely within the language of the Guidelines. We are not charged with the responsibility to question the wisdom of the Sentencing Commission when it has spoken with the requisite degree of specificity.

Even prior to the 2001 amendments, we declined to permit departures based on the

seriousness of the previous offense when that offense fits within the language of the Guidelines. In *United States v. Polanco,* 29 F.3d 35, 36 (2d Cir.1994), the earlier offense was the sale of five grams of cocaine, for which the defendant was sentenced to six months imprisonment and five years probation. The district court declined to impose an enhancement because it determined the prior offense was not an "aggravated felony" under § 2L1.2(b)(2). We vacated the sentence, holding that because the earlier conviction was one punishable under the Controlled Substances Act—one of the statutes enumerated under 18 U.S.C. § 924(c)(2)—it rises to the level of "aggravated felony" under § 2L1.2(b)(2) and 8 U.S.C. § 1326(b)(2) *"regardless of the quantity or nature of the contraband or the severity of the sentence imposed." Id.* at 38 (emphasis added). We held that the Guidelines adequately accounted "for the circumstances underlying the offense conduct." *Id.* at 38 n. 3. Thus, the circumstances of a prior drug offense could not justify a downward departure.

We followed this reasoning in *United States v. Abreu–Cabrera,* 64 F.3d 67 (2d Cir.1995). Observing that the Commission had chosen to modify the definition of aggravated felony to preclude less significant crimes from triggering enhancements, we commented, in dicta, that the similar failure "to limit the category of drug trafficking crimes that call for the enhanced sentence for illegal reentry following deportation as an aggravated felon cannot be seen as inadvertent." *Id.* at 75. Inasmuch as Congress acted within its authority and the Sentencing Commission incorporated that legislative direction into the Guidelines, such direction may not be overturned by the judiciary. *See id.* at 75. *Abreu–Cabrera*'s analysis was cited approvingly in *United States v. Amaya–Benitez,* 69 F.3d 1243, 1247 (2d Cir.1995).

This view has acquired even greater authority following the 2001 amendments. There the Commission explicitly addressed the severity of prior convictions and specified how such convictions would affect sentencing. In light of the conscious choices the Commission made, the absence of any distinction between various types of controlled substances is plain. The rationales of *Polanco* and *Abreu–Cabrera* therefore continue to apply, and as the Guidelines adequately account for the circumstances underlying the offense conduct, *Abreu–Cabrera,* 64 F.3d at 75; *Polanco,* 29 F.3d at 38 n. 3, it is error for a sentencing court to depart downward on that basis.

Further, the language of the amendments supports this conclusion. In interpreting the Guidelines we use basic rules of statutory construction and assume legislative purpose is expressed by the ordinary meaning of the text, absent persuasive reasons to do otherwise. *United States v. Mullings,* 330 F.3d 123, 124–25 (2d Cir. 2003) *(per curiam ); United States v. Martinez–Santos,* 184 F.3d 196, 204 (2d Cir. 1999).

Section 2L1.2's 16–level enhancement applies to a prior conviction for "a drug trafficking offense for which the sentence imposed exceeded 13 months." Drug trafficking offenses include the sale of *"a controlled substance"* (emphasis added). Marijuana is a controlled substance, *see* 21 U.S.C. §§ 802(6), 812(c), Sched.I(c)(10) (2000), and is punishable under the Controlled Substances Act, *see* 21 U.S.C. § 841(a)(1). In making gradations based on severity of the crime, the Commission did not distinguish between types of controlled substances. To sanction distinctions based on the type of controlled substance for which a defendant was convicted

thus contradicts the clear language of the Guidelines.

We think this evident from the fact that in creating the graduated enhancements, the Sentencing Commission simultaneously deleted its Application Note, which had previously indicated that downward departures might be warranted based on the severity of the offense. "The Commission determined that the graduation of the 16–level enhancement based on the seriousness of the prior conviction negated the need for this departure provision." U.S.S.G.App. C, Amend. 632 (Reason for Amendment) (Supp.2001). This explanation clarifies and supports the Commission's goal of incorporating its assessment of severity into its gradations.

As a result, having considered what are the boundaries of § 2L1.2's heartland, we hold that the Commission intended the 16–level enhancement to apply to all felony convictions for trafficking controlled substances that resulted in imprisonment for a period greater than 13 months. Stultz's prior conviction is unquestionably within the heartland. Whether marijuana deserves to be treated comparably to other drugs for the purposes of this enhancement has been considered by the Commission, and hence may not serve as a grounds for departure.

### B.  *Lapse of Time Since the Prior Conviction*

The district court also justified its downward departure on the grounds that the prior conviction occurred 16 years ago. The sentencing court believed that the passage of time was not adequately considered by the Commission.

■  We have never had occasion to rule that the length of time between a current conviction and a prior conviction are not grounds for departure. But, we have held in at least two cases that a particular lapse of time was not a sufficient ground on which to base a downward departure.

In *Amaya–Benitez*, we ruled that a nine year passage of time between the commission of the underlying felony and the conviction for illegal drugs reentry was not so "ancient" as to warrant a downward departure. 69 F.3d at 1249. More recently, in *United States v. Gitten*, 231 F.3d 77, 79–81 (2d Cir.2000), we affirmed a 16–level enhancement for a prior conviction that was 22 years old. The Sentencing Guidelines provide no time limit on the prior federal and state convictions that may be used to trigger a sentence enhancement. Without deciding that the age of a prior conviction can never be a grounds for downward departure, we are persuaded in this case that the 16 year passing of time from the prior conviction to the illegal reentry conviction was not an appropriate ground for a downward departure.

In arguing that the period of time between the two offenses is a proper ground for departure, defendant misapprehends the effect of recent amendments to the Application Notes. He points out that in the pre–2001 Guidelines, the term aggravated felony, which covered all enhancements under § 2L1.2(b)(1)(A), was defined in reference to 8 U.S.C. § 1101(a)(43) and applied "*without regard to the date of conviction.*" U.S.S.G. § 2L1.2(b)(1)(A), Application Note 1 (emphasis added). Currently, enhancements for aggravated felonies have been moved to subsection (C), and several more specific offenses trigger the graduated enhancements under subsections (A) and (B). These felonies, such as drug trafficking and firearms offenses, include new definitions but do not contain the clause "without regard to the date of conviction," which has been retained in the definition of "aggravated felony." Appellee insists this omission means that the

date of conviction is fair grounds for downward departure for any felonies listed in subsections (A) and (B).

To the contrary, we think this is not a natural reading of the language in the new Application Notes. It appears more reasonable to conclude first that the Commission included the language as to dates with respect to aggravated felonies to clarify that it wanted to capture the expanding definition of aggravated and apply it to sentencing enhancements whether or not the crime was considered aggravated at the time of the original conviction. *See, e.g., United States v. Westcott,* 159 F.3d 107, 116 (2d Cir.1998) (noting the Commission's desire to incorporate 8 U.S.C. § 1101(a)(43)'s broadening definition of aggravated in sentencing enhancements); *United States v. Luna–Reynoso,* 258 F.3d 111, 114–15 (2d Cir.2001) (applying the aggravated felony enhancement to prior burglary offense that was not defined as an aggravated felony at the time of conviction). While the Commission sought to capture the expanding definition of the term "aggravated," there was no such problem with other definitions. Accordingly, the clause referring to dates of conviction was unnecessary with respect to drug trafficking crimes, and such omission is not an invitation to consider the period of time between offenses as grounds for departure.

Further, it defies common sense to contend that the Commission was cryptically and implicitly trying to introduce a new ground for departure while simultaneously and explicitly repealing the authority to grant those departures it had previously allowed. Moreover, the resulting amendments and commentary suggest that the Commission believed its new system of graduated enhancements was eliminating the need for discretionary departures based on the nature of the prior conviction.

Under these circumstances, and absent a more explicit directive from the Commission, we decline the invitation to craft a broad new ground for departure.

## CONCLUSION

Accordingly, for the reasons stated, we vacate the judgment of conviction insofar as it fixed a sentence, and remand this case to the district court for it to resentence defendant within the applicable Guidelines range.

Vacated and remanded.